RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0001p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

JERE HINMAN,

　　　　　　　　　　　　　　　　　　　　*Plaintiff*,

　　*v.*

VALLEYCREST LANDSCAPING DEVELOPMENT, INC., et al.
　　　　　　　　　　　　　　　　　　*Defendants*,


BRIGHTVIEW LANDSCAPE DEVELOPMENT, INC.,
　　　　　　　*Defendant-Third Party Plaintiff-Appellant*,

　　*v.*

GEORGIA GUNITE AND POOL COMPANY, INC.,
　　　　　　*Third Party Defendant-Appellee*.

> No. 22-6019

─────────────────

Appeal from the United States District Court for the Middle District of Tennessee at Nashville.
No. 3:19-cv-00551—Aleta Arthur Trauger, District Judge.

Argued:  December 7, 2023

Decided and Filed:  January 2, 2024

Before:  BUSH, LARSEN, and MURPHY, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:**  W. Douglas Kemper, WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP, Louisville, Kentucky, for Appellant.  Isaac S. Lew, LEWIS THOMASON, P.C., Memphis, Tennessee, for Appellee.  **ON BRIEF:**  W. Douglas Kemper, WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP, Louisville, Kentucky, for Appellant.  Isaac S. Lew, LEWIS THOMASON, P.C., Memphis, Tennessee, for Appellee.

　　LARSEN, J., delivered the opinion of the court in which BUSH and MURPHY, JJ., joined.  MURPHY, J. (pp. 10–15), delivered a separate concurring opinion.

—————————

**OPINION**

—————————

LARSEN, Circuit Judge.   A customer sued BrightView Landscape Development, Inc., for alleged faulty construction of a residential pool.   BrightView believed that Georgia Gunite and Pool Company, Inc., a subcontractor that performed work on the pool, was liable for any damages it might have to pay the customer.   So BrightView filed a third-party complaint to bring Georgia Gunite into the case.   The district court granted Georgia Gunite's subsequent motion for summary judgment, concluding that a Tennessee statute of repose precluded BrightView's third-party action.   BrightView appeals.   For the reasons that follow, we AFFIRM.

I.

In March 2015, Jere Hinman hired BrightView Landscape Development, Inc., to design and build a pool at her residence.   The next month, BrightView subcontracted with Georgia Gunite and Pool Company, Inc., to install plumbing and spray shotcrete for the pool shell.   That contract required Georgia Gunite to indemnify and hold BrightView harmless from any actions arising out of Georgia Gunite's performance of the subcontract.   Georgia Gunite performed the work that same month.   The parties agree that the pool was substantially completed in September 2015.

Due to an abnormally high water bill, Hinman contacted BrightView two months later.   BrightView discovered that the pool was leaking water because Georgia Gunite had not installed a particular part (which was neither included in Georgia Gunite's scope of work nor its bid).   Working together, BrightView and Georgia Gunite tried to address the problem in April 2016, traveling back to Hinman's home and installing a retrofitted part.

Three years later, Hinman sued BrightView, alleging, among other issues, defective construction of the pool because of the late-installed part.   More than two years after Hinman initiated her suit, and about six years after substantial completion of the pool, BrightView filed a third-party complaint to bring Georgia Gunite into the case.   BrightView alleged that an indemnification clause in the parties' subcontract obligated Georgia Gunite to indemnify

BrightView against Hinman's claims arising out of Georgia Gunite's work on the pool. Georgia Gunite had not heard from BrightView or Hinman regarding the pool since it had installed the part in 2016.

Georgia Gunite moved for summary judgment, arguing that the Tennessee statute of repose for actions alleging defective improvements to real estate covered BrightView's action for indemnity. BrightView responded by arguing that the Tennessee repose statute does not apply to contract actions and that its indemnity claim against Georgia Gunite is contractual in nature. The district court concluded that the Tennessee Supreme Court would interpret the Tennessee statute of repose to include BrightView's claim and granted Georgia Gunite summary judgment. *Hinman v. BrightView Landscape Dev., Inc.*, 627 F. Supp. 3d 922, 928 (M.D. Tenn. 2022).

At BrightView's request, the district court certified its decision as final and appealable under Federal Rule of Civil Procedure 54. BrightView now appeals. We have jurisdiction under 28 U.S.C. § 1291.

II.

BrightView argues that the district court erred in concluding that the Tennessee Supreme Court would interpret the statute of repose as preventing BrightView's third-party action against Georgie Gunite. We review the summary-judgment decision, including the district court's interpretation of state law, de novo. *El-Khalil v. Oakwood Healthcare, Inc.*, 23 F.4th 633, 634 (6th Cir. 2022); *Lukas v. McPeak*, 730 F.3d 635, 637 (6th Cir. 2013). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *El-Khalil*, 23 F.4th at 634–35 (quoting Fed. R. Civ. P. 56(a)).

As the parties have framed it, the dispositive question is whether Tennessee's statute of repose encompasses BrightView's claim for indemnity, notwithstanding its basis in contract rather than tort or common law. To answer this question of Tennessee law, "we must determine, as best we can, how we think the Tennessee Supreme Court would interpret the statute if presented with this issue." *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1135 (6th Cir. 1986). Of course, decisions of the Tennessee Supreme Court are key in this exercise. *See id.* In the

absence of on-point caselaw from the Tennessee Supreme Court, we also consider any precedent from the Tennessee Court of Appeals as persuasive authority. *Lukas*, 730 F.3d at 638.

The Tennessee Supreme Court's "primary rule governing [its] construction of any statute is to ascertain and give effect to the legislature's intent." *Nye v. Bayer Cropscience, Inc.*, 347 S.W.3d 686, 694 (Tenn. 2011). The court begins by "examining the language of the statute." *Id.* If unambiguous, the "natural and ordinary meaning of the statutory language" demonstrates what the legislature intended. *Id.* (quoting *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000)). The repose statute provides:

> All actions, arbitrations, or other binding dispute resolution proceedings to recover damages for any deficiency in the design, planning, supervision, observation of construction, or construction of an improvement to real property, for injury to property, real or personal, arising out of any such deficiency, or for injury to the person or for wrongful death arising out of any such deficiency, must be brought against any person performing or furnishing the design, planning, supervision, observation of construction, or construction of the improvement within four (4) years after substantial completion of an improvement.

Tenn. Code. Ann. § 28-3-202.

Given its current precedent, we predict the Tennessee Supreme Court would conclude that "the plain language of the statute" encompasses BrightView's claim against Georgie Gunite. *See Chrisman v. Hill Home Dev., Inc.*, 978 S.W.2d 535, 540 (Tenn. 1998).

Consider the nature of BrightView's claim and the relief it seeks. BrightView asked the district court for an order requiring Georgia Gunite to indemnify—*i.e.*, to "reimburse" for any "loss suffered," *Indemnify*, *Black's Law Dictionary* (11th ed. 2019)—BrightView for any costs it incurred arising out of Georgia Gunite's work on Hinman's swimming pool. According to BrightView, Georgia Gunite's "acts, and/or omissions" "in its performance of the [subcontract] in connection with the subject construction project obligate[]" it to indemnify BrightView. Third-Party Complaint, R. 52, PageID 419. Regardless of BrightView's designation of the claim as sounding in contractual indemnity, the claim nevertheless is at its core an "action[] . . . to recover damages for any deficiency in the . . . construction of an improvement to real property." *See* Tenn. Code. Ann. § 28-3-202; *Action*, *Black's Law Dictionary* (11th ed. 2019) (defining "action," without limitation, as "a civil or criminal judicial proceeding"); *Damages*, *Black's Law*

*Dictionary* (11th ed. 2019) (defining "damages" as "[m]oney claimed by, or ordered to be paid to, a person as compensation for loss or injury"). Put simply, absent Georgia Gunite's alleged deficient work, BrightView could not recover damages from it in this case—on any theory. So BrightView had to bring its claim within four years after substantial completion of the improvement. *See* Tenn. Code. Ann. § 28-3-202.

To the extent that BrightView argues that contractual indemnity claims are not covered simply because they are contractual in nature, the Tennessee Supreme Court has all but expressly ruled that position untenable. In *Chrisman*, the Tennessee Supreme Court rejected the plaintiffs' contention that the repose statute reached only negligence claims, holding that the statute also covered claims for continuing nuisance, "a strict liability action." 978 S.W.2d at 540. The court emphasized that the Tennessee legislature granted repose for "*all* actions to recover damages[] caused by any deficiency in the design or construction of an improvement." *Id.* (emphasis in original). And the court directed that "the substantive allegations" of the complaint rather than "the designation given to a cause of action" determine whether the statute applies. *Id.* In other words, Tennessee law looks to whether, "[a]t the heart of the" claim, a plaintiff seeks to recover damages "caused by" any deficient construction. *Id.* at 540–41. The state's high court tells us that's because the Tennessee legislature sought to "insulate contractors" from "liability for defective construction" by requiring any claims to be brought within four years of substantial completion. *Id.*; *see also Watts v. Putnam Cnty.*, 525 S.W.2d 488, 492 (Tenn. 1975). Contractors, the court said, "are not at all insulated if plaintiffs are allowed to circumvent the statute of repose merely by sticking" a different label on the claim. *Chrisman*, 978 S.W.2d at 540.

*Chrisman*, it is true, involved a claim sounding in tort. But nothing in the court's reasoning suggests that the statute is limited to such claims. Indeed, the court's decision cited, with approval, Tennessee Court of Appeals cases holding that the repose statute can prevent even claims for breach of implied and express warranty, which sound in contract. *Id.* (citing *Lonning v. Jim Walter Homes, Inc.*, 725 S.W.2d 682 (Tenn. Ct. App. 1987) and *Pridemark Custom Plating, Inc. v. Upjohn, Co.*, 702 S.W.2d 566 (Tenn. Ct. App. 1985)); *see also Williams v. Thompson*, 443 S.W.2d 447, 449 (Tenn. 1969) (claim for breach of implied warranty "sounds in

contract"); *Bissinger v. New Country Buffet*, 2014 WL 2568413, at *13 (Tenn. Ct. App. June 6, 2014) ("[W]arranty claims sound in contract rather than in tort."). Even though the claims in *Lonning* and *Pridemark* sounded in contract, the Tennessee Supreme Court remarked that "the statute of repose applies with equal effect to all of them." *Chrisman*, 978 S.W.2d at 540. The court recently reaffirmed this position by signaling that one of its earlier cases involving a claim "sound[ing] in contract," *Williams*, 443 S.W.2d at 449, would now fall within the later-enacted statute of repose. *Benz-Elliott v. Barrett Enters., LP*, 456 S.W.3d 140, 148 n.8 (Tenn. 2015). Thus, we think the Tennessee Supreme Court would reject BrightView's contention that the contractual nature of its claim, alone, is dispositive.

We find additional support for our prediction in decisions of the Tennessee Court of Appeals. *See Lukas*, 730 F.3d at 638. The parties draw our attention to *Clinton Seafood, Inc. v. Harrington*, 1991 WL 50218 (Tenn. Ct. App. Apr. 10, 1991). There, the Tennessee Court of Appeals held that the statute of repose extends to claims for common-law indemnity. *Id.* at *2 ("We conclude that the statutory language 'all actions to recover damages' must be construed to include actions for indemnity, notwithstanding their discrete nature, because they are derived from and arise out of an underlying 'deficiency in the construction of an improvement to real estate.'"). BrightView does not argue that *Clinton Seafood* is an errant case; it conceded at oral argument that common-law indemnity claims indeed are within the statute of repose. Recording of Oral Arg. at 7:01–7:19, 10:24–10:55, 11:05–11:50, 30:23–31:50. That proposition finds further support in published authority. The Tennessee Court of Appeals has applied the statute of repose to claims for indemnity where a general contractor sues a subcontractor to recover its losses after being held liable to a customer, even when the general contractor brings its lawsuit via claims for "breach of contract, breach of warranty, indemnity and tort." *Counts Co. v. Praters, Inc.*, 392 S.W.3d 80, 82, 86 (Tenn. Ct. App.), *perm. app. denied* (Oct. 23, 2012); *see also Wells Fargo & Co. v. Paul Davidson Const. Co.*, 1992 WL 108703, at *3 (Tenn. Ct. App. May 22, 1992) (bank's claims for common law indemnity and contribution fall within the repose statute). While it is true that the plaintiffs in these cases seemed to demand indemnity under a common law, as opposed to a contract, theory, we do not think this distinction makes a difference in light of the court's holding that even breach-of-contract claims can fall within the repose statute.

To sum up: Tennessee courts have consistently looked beyond a plaintiff's characterization of a claim to determine whether, at its core, the claim falls within the plain language of the statute preventing "[a]ll actions" "to recover damages" for deficient construction. Tenn. Code Ann. § 28-3-202. Decisions of the Tennessee Supreme Court strongly signal that contract actions can fall within the statute of repose. The Tennessee Court of Appeals has applied the statute to breach-of-contract claims and warranty actions that sound in contract and has held that indemnity claims can fall within the statute. So we think it natural to conclude that the Tennessee Supreme Court would hold that the statute of repose includes a claim for contractual indemnity that seeks to recover damages arising out of alleged deficient construction. A natural reading of the statute, the Tennessee Supreme Court's prior interpretations of the statute, and Tennessee Court of Appeals cases all point in the same direction: Tenn. Code Ann. § 28-3-202 encompasses BrightView's claim for contractual indemnification against Georgia Gunite.

BrightView's arguments to the contrary are not persuasive. To start, it characterizes the statute of repose as a "tortious construction defect statute of repose" that applies only to "tort actions." Appellant Br. at 9–10. But, as the Tennessee courts have explained, by applying repose to "[a]ll actions," the Tennessee legislature did not so limit the reach of the statute. Tenn. Code Ann. § 28-3-202. It could have done so—indeed, some other states have. *See, e.g.*, Mass. Gen. Laws ch. 260, § 2B (applying repose to "[a]ction[s] of tort"). To read the word "tort" into Tennessee's repose statute would contradict the Tennessee Supreme Court's admonition not to apply a "forced or subtle construction that would extend or limit the statute's meaning." *Nye*, 347 S.W.3d at 694 (quoting *Flemming*, 19 S.W.3d at 197). And, as discussed, the Tennessee Supreme Court has indicated, and the Tennessee Court of Appeals has expressly held, that the legislature chose not to grant repose to tort claims alone. *See, e.g.*, *Chrisman*, 978 S.W.2d at 540; *Lonning*, 725 S.W.2d at 685–86; *Counts Co.*, 392 S.W.3d at 87.[1]

---

[1]We express no opinion or prediction as to whether the Tennessee Supreme Court would conclude that the statute of repose provides a default rule around which parties can expressly contract. *See Ismoilov v. Sears Holdings Corp.*, 2018 WL 1956491, at *2, *7–8 (Tenn. Ct. App. Apr. 25, 2018) (recognizing uncertainty on the question).

BrightView next says that, if applied here, the repose statute would extinguish its claim before it even accrues, or before Georgia Gunite's potential liability arises. After all, the statute of repose at issue in this case "begin[s] to run on the date of substantial completion as opposed to the date of injury or damage." *Watts*, 525 S.W.2d at 491. But this contention is, at its core, directed at the nature of a statute of repose. Unlike a statute of limitations, which "normally governs the time within which legal proceedings must be commenced after a cause of action accrues," a statute of repose "is unrelated to the accrual of any cause of action." *Calaway ex rel. Calaway v. Schucker*, 193 S.W.3d 509, 515 (Tenn. 2005). Its effect is "to prevent what might otherwise be a cause of action from ever arising." *Id.* (citation omitted). And we have long recognized that "Tennessee courts have rejected" similar arguments that a statute cannot be read to have the "effect of extinguishing claims before they arise." *Mathis v. Eli Lilly & Co.*, 719 F.2d 134, 145 (6th Cir. 1983).

For a similar reason, BrightView's argument that its claim should be subject only to Tennessee's contract statute of limitations falls short. Statutes of repose are not mutually exclusive with statutes of limitations; the repose statute is "superimposed upon existing statutes." *Watts*, 525 S.W.2d at 491; *see also id.* at 493 (illustrating when a plaintiff must file suit under various scenarios, accounting for both a statute of limitations and the repose statute at issue in this case). Thus, although BrightView's claim is likely also governed by Tennessee's contract statute of limitations, that conclusion does not preclude application of the repose statute.

Finally, citing a few cases interpreting other states' repose statutes, BrightView argues that our prediction of how the Tennessee Supreme Court would construe the Tennessee statute of repose would render the statute an outlier. These cases, of course, are not directly instructive as to how the Tennessee Supreme Court would interpret the Tennessee statute—particularly in light of the Tennessee caselaw we have discussed. But perhaps the intuition is that the Tennessee Supreme Court would be unlikely to adopt an interpretation that leaves it unique among the states. Whatever the instinct, the interpretation we predict today is not such an outlier. *See, e.g.*, *Parkridge Assocs., Ltd v. Ledcor Indus., Inc.*, 54 P.3d 225, 228, 232 (Wash. Ct. App. 2002) (statute of repose applicable to "all claims" covers claims for equitable and contractual indemnity); *State, Dep't of Transp. v. Echeverri*, 736 So. 2d 791, 792 (Fla. Dist. Ct. App. 1999)

(statute of repose applicable to "[a]n action" covers claims for indemnity); *see also New Riegel Loc. Sch. Dist. Bd. of Educ. v. Buehrer Grp. Architecture & Eng'g, Inc.*, 133 N.E.3d 482, 492 (Ohio 2019) (statute of repose applicable to "cause[s] of action" including for "indemnity" applies to contract actions); *McGee v. City of Warren*, 807 N.W.2d 315 (Mich. 2012) (similar).

Nor is the practical result of our prediction particularly odd. As state court interpretations differ, so too does the language of state statutes. Many state repose statutes expressly include contractual indemnity claims. *E.g.*, N.J. Stat. Ann. § 2A:14-1.1. Some explicitly exempt, or apply different rules to, indemnity claims. *E.g.*, Minn. Stat. Ann. § 541.051; Cal. Civ. Proc. Code § 337.15(c) (indemnity claims based on latent construction defects are generally reposed, except for those brought as a cross claim in a timely primary action). And some are silent. *E.g.*, N.H. Rev. Stat. Ann. § 508:4-b; Wash. Rev. Code § 4.16.310; Tenn. Code Ann. § 28-3-202. Considering the many differences in state court interpretations and the text of state statutes, we cannot agree that our prediction today is anomalous.

The district court did not err in concluding that the Tennessee Supreme Court would hold that BrightView's claim falls within the Tennessee statute of repose. Summary judgment for Georgia Gunite was therefore appropriate.

* * *

We AFFIRM.

———————————

**CONCURRENCE**

———————————

MURPHY, Circuit Judge, concurring.  I concur in Judge Larsen's excellent opinion rejecting BrightView Landscape Development's atextual reading of the Tennessee statute of repose.  The Tennessee Supreme Court's precedent in this area suggests that it would interpret the statute to cover BrightView's claim for indemnity against Georgia Gunite and Pool Company.  As the majority explains, nothing in the statute's text supports BrightView's lone contrary argument: that the statute reaches only tort claims, not contract claims.

That said, I write to highlight some interpretive issues that we need not resolve in this case because BrightView did not raise them.  The statute of repose provides:

> All actions, arbitrations, or other binding dispute resolution proceedings to recover damages for any deficiency in the design, planning, supervision, observation of construction, or construction of an improvement to real property, for injury to property, real or personal, arising out of any such deficiency, or for injury to the person or for wrongful death arising out of any such deficiency, must be brought against any person performing or furnishing the design, planning, supervision, observation of construction, or construction of the improvement within four (4) years after substantial completion of an improvement.

Tenn. Code Ann. § 28-3-202.  As far as I can tell, the Tennessee courts have yet to answer two questions about this text.  How does the text apply to crossclaims or third-party claims raised in a single case?  And how do the statute's three categories of covered claims relate to each other?

*First*, the statute notes that "all actions . . . must be brought" within four years of a construction project's substantial completion.  *Id.*  This text makes critical the date on which an "action" is brought.  But it is not clear to me what the statute means by the word "action."  Does it mean the general *case*?  Or does it mean a specific *claim* within the case?

The facts here show why this distinction matters.  Jere Hinman brought the *case* against BrightView in July 2019, which was within four years of her pool's substantial completion in September 2015.  But BrightView did not file its *third-party complaint* against Georgia Gunite until September 2021—after the four-year statute of repose had run.  If "action" refers to the

overarching case, BrightView's third-party claim against Georgie Gunite might well be timely. After all, the general case was brought within the four-year repose period. But if "action" refers to each claim within the case, BrightView's third-party claim against Georgia Gunite is untimely.

This interpretative issue also implicates more than third-party claims. Suppose this case had all the same facts except that Hinman originally sued both BrightView and Georgia Gunite. If BrightView then filed a *crossclaim* against Georgia Gunite (rather than a *third-party claim*), would the date of the case or the date of the crossclaim matter for purposes of the statute of repose?

I can see arguments both ways. On the one hand, most lawyers would initially presume that "action" means "case." The legal community generally understands the word to refer to a "judicial proceeding" (a common definition of "action") rather than an "assertion of an existing right" (a common definition of "claim"). *Black's Law Dictionary* 28, 240 (7th ed. 1999). Indeed, it is natural to say that a "third-party complaint" was filed within an "action" that had been brought earlier. *See Velsicol Chem. Corp. v. Rowe*, 543 S.W.2d 337, 338–39 (Tenn. 1976) (citing Tenn. R. Civ. P. 14.01). At times, moreover, courts have interpreted statutes to follow this ordinary meaning of the word "action" and have distinguished an "action" from the "claims" within it. *See, e.g.*, *Brown v. Megg*, 857 F.3d 287, 290–91 (5th Cir. 2017); *Horkey v. J.V.D.B. & Assocs., Inc.*, 333 F.3d 769, 775 (7th Cir. 2003); *Medmoun v. Home Depot U.S.A., Inc.*, 2022 WL 1443919, at *3 (M.D. Fla. May 7, 2022); *Lincoln Harbor Enterps., LLC v. Hartz Mountain Indus., Inc.*, 517 F. Supp. 3d 293, 301–02 (D.N.J. 2021). And the Tennessee legislature might have had good reasons to tie the statute of repose to the overarching "judicial proceeding." Assume that a homeowner files a negligence case against two contractors on the last day of the repose period. In that scenario, the contractors would lack a realistic opportunity to respond by filing independent indemnity suits against each other. But if "action" means "judicial proceeding," they could still file indemnity crossclaims within the homeowner's proceeding.

On the other hand, courts also sometimes interpret the word "action" to mean "claim" when the context calls for that reading. Take *Jones v. Bock*, 549 U.S. 199 (2007). There, the Supreme Court interpreted the Prison Litigation Reform Act's exhaustion provision. *Id.* at 204.

This provision stated that "[n]o action shall be brought" to pursue various kinds of claims unless a prisoner first exhausted any prison administrative remedies. 42 U.S.C. § 1997e(a). What happened if a prisoner exhausted those remedies for some claims but not others—all of which the prisoner asserted in one case? Must a court dismiss the whole case? Or just the unexhausted claims? The Supreme Court opted for a "claim-by-claim approach." *Jones*, 549 U.S. at 224. It refused to interpret the provision's "boilerplate language" ("[n]o action shall be brought") to require the dismissal of the entire suit. *Id.* at 220. It also suggested that courts have commonly adopted this interpretation of "action" when legislatures use the word in the statute-of-limitations context. *Id.* at 220–21. Nor would it be unusual to refer to BrightView's claim against Georgia Gunite as a "third-party *action*" "for indemnity." *Black's*, *supra*, at 32 (emphasis added).

*Second*, if one breaks this statute down into its component parts, it prohibits three categories of actions. It reaches "all actions" "to recover damages":

> (1) "for any deficiency in the design, planning, supervision, observation of construction, or construction of an improvement to real property,"
>
> (2) "for injury to property, real or personal, arising out of any such deficiency, or"
>
> (3) "for injury to the person or for wrongful death arising out of any such deficiency[.]"

Tenn. Code Ann. § 28-3-202. Which of these three categories of actions does BrightView's indemnity claim against Georgia Gunite fall into?

Georgia Gunite conceded at oral argument that BrightView's claim does not fall within the second two categories. Those two apply to fact patterns in which a builder's defective design or construction of a real-property improvement caused some *other* injury. The second category would apply to claims that the defective design or construction caused an injury to other property (say, a subdivision's defectively designed "drainage system" caused substantial flooding in a home). *Cf. Chrisman v. Hill Home Dev., Inc.*, 978 S.W.2d 535, 537 (Tenn. 1998). And the third category would apply to claims that the defective design or construction caused an injury to a person (say, a customer tripped on a "defectively constructed" "ramp" at a fast-food restaurant). *Cf. Clinton Seafood, Inc. v. Harrington*, 1991 WL 50218, at *1 (Tenn. Ct. App. Apr. 10, 1991). But BrightView does not seek money for an injury to its property or people.

Georgia Gunite instead argues that BrightView's claim for indemnity falls within the first category, which reaches actions seeking damages "for any deficiency in the design, planning, supervision, observation of construction, or construction of an improvement to real property[.]" Tenn. Code Ann. § 28-3-202.   Whether BrightView's claim fits this text depends on the following question: What connection must exist between a request for damages and a deficiency in a real-property improvement to describe the damages request as one "for" the deficiency? I see two potential paths to answering this question—one broader and one narrower.

The broader path starts—and ends—with the ordinary meaning of this phrase as backed by common-law concepts.  The preposition "for" often means "[b]ecause of" or "on account of[.]"  VI *Oxford English Dictionary* 25 (2d ed. 1989).  And courts regularly recognize that these phrases trigger traditional causation concepts like "but-for causation."  *See, e.g.*, *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 346–47, 351–52, 360 (2013); *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176–77 (2009).  So one might interpret this language to cover any damages that would not have arisen "but for" the alleged deficiency in the real-property improvement. *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 140 S. Ct. 1009, 1014 (2020). The Tennessee Supreme Court seemed to read the statute of repose in this broad way when it noted that the statute covered actions seeking damages "*caused by* any deficiency in the design or construction of an improvement[.]"  *Chrisman*, 978 S.W.2d at 540 (emphasis added).  And there can be no dispute that the alleged deficiencies in the construction of Hinman's pool are the but-for causes of BrightView's indemnity claim against Georgia Gunite.

The narrower path relies on the statute's broader context.  To begin with, if we read the first category to reach all actions in which a deficiency in a real-property improvement is the but-for cause of the damages, what is the point of the second and third categories?  A "but-for cause" view may well read the first category to swallow up the other two and leave them with no work to do.  Indeed, Georgia Gunite's counsel all but conceded at oral argument that the company's reading renders these two other categories meaningless.  But courts generally strive to give effect to all of a statute's provisions.  *See Yebuah v. Ctr. for Urological Treatment, PLC*, 624 S.W.3d 481, 487 (Tenn. 2021); *see also FCC v. NextWave Pers. Commc'n Inc.*, 537 U.S. 293, 302 (2003).

Next, but-for cause is not much of a limiting principle. As Justice Scalia explained, "'for want of a nail, a kingdom was lost' is a commentary on fate, not the statement of a major cause of action against a blacksmith." *Holmes v. Secs. Investor Prot. Corp.*, 503 U.S. 258, 287 (1992) (Scalia, J., concurring in the judgment). There comes a point at which no reasonable person would describe a plaintiff's action as one "for" a deficiency in a real-property improvement, yet the action may still satisfy the but-for-causation test. Suppose that a bank loaned a builder funds to complete a project, which the builder constructed properly. Suppose further that the builder's deficient work on a second project led to its insolvency and so its default on the bank's loan. If the bank sued the builder to collect on the loan, would anyone say that it sued to recover damages "for" the deficiency in the second project? I do not think so. But these facts may well meet the but-for cause test.

Given these interpretive difficulties, a natural reading of the text might require more than but-for cause. Maybe one could read the first category of actions to cover only those in which a real-property owner seeks damages directly "for" the defective improvement *itself* rather than for injuries that have indirectly "aris[en] out of" the deficiency (the injuries covered by the second and third categories). Tenn. Code Ann. § 28-3-202. Putting this instinct into legalese, perhaps the preposition "for" in the first category incorporates the traditional concept of proximate causation. *See Kroger Co. v. Giem*, 387 S.W.2d 620, 625–26 (Tenn. 1964); William L. Prosser, *Handbook of the Law of Torts* 311–75 (1941). That concept sometimes asks whether a "direct relation" exists between the plaintiff's injury and the defendant's conduct. *Holmes*, 503 U.S. at 268; *see* Prosser, *supra*, at 347–48. When, for example, a defendant's conduct first harmed one party and then later events spread that harm to third parties, the proximate-cause concept sometimes allowed only the directly harmed party to recover. *See Holmes*, 503 U.S. at 268–69. As Justice Holmes once noted, "[t]he general tendency of the law, in regard to damages at least, is not to go beyond the first step." *S. Pac. Co. v. Darnell-Taenzer Lumber Co.*, 245 U.S. 531, 533 (1918). Here, then, one might argue that only an "indirect" connection exists between BrightView's indemnity claim and the deficient construction. Why? Because BrightView seeks damages directly "for" Georgia Gunite's distinct breach of its contractual promise to hold BrightView harmless, not for Georgia Gunite's deficient construction. And since neither the

second nor the third categories of actions seem to cover this type of indirect injury, maybe the statute of repose does not apply to indemnity claims.

In the end, BrightView did not raise these issues, so this case does not require us to resolve them. But the Tennessee courts might someday have to grapple with them. I thus flag them here.